UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EILEEN SCHNEIDERMESSER,<br><br>                       Plaintiff,<br><br>v.<br><br>NYU GROSSMAN SCHOOL OF MEDICINE,<br><br>                       Defendant. | 21 Civ. 7179 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

       Plaintiff Eileen Schneidermesser ("Schneidermesser" or "Plaintiff") brings suit against Defendant NYU Grossman School of Medicine at NYU Langone Nassau Gastroenterology Associates ("NYU" or "Defendant"), alleging that she was unlawfully terminated due to age discrimination, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §623(a)-1, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290. *See generally* Compl., ECF No. 1. Before the Court is Defendant's motion for summary judgment. *See* ECF No. 61. For the reasons that follow, Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

### BACKGROUND

       The following facts are drawn from the Complaint, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("SMF"), ECF No. 63, and evidentiary submissions in connection with Defendant's motion. The facts are either undisputed or, if disputed, resolved in the light most favorable to Plaintiff as the non-moving party, with all reasonable inferences drawn in her favor. *See Horn v. Medical Marijuana, Inc.*, 80 F.4th 130, 135 (2d Cir. 2023).[1]

---

[1] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated. All references to Rules are to the Federal Rules of Civil Procedure.

The Court "accept[s] all sworn statements by [the plaintiff] as to matters on which she was competent to testify, including what she did, what she observed, and what she was told by company managers." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019). It disregards any statement that is "not based upon the affiant's personal knowledge," "contain[s] inadmissible hearsay," or "make[s] generalized and conclusory statements." *Geo-Grp. Commc'ns, Inc. v. Shah*, No. 15 Civ. 1756, 2020 WL 5743516, at *11 n.8 (S.D.N.Y. Sept. 25, 2020).

Plaintiff became an NYU billing coordinator in 2012 when the practice she had been working at, Nassau Gastroenterology, was acquired by NYU. SMF ¶ 5, 7. When NYU took over the practice, Plaintiff received a copy of NYU's policies, including its workplace conduct policies and procedures ("Rules of Conduct"). *Id.* ¶ 8. Among other things, the Rules of Conduct require employees to exercise good judgment and prohibit employees from "[u]sing abusive, obscene or profane language" in the workplace. *Id.* ¶ 3; *see also* Cabrera Decl. Ex. 1, Rules of Conduct 3, ECF No. 61-4. An employee's violation of the Rules of Conduct can lead to disciplinary action, up to and including termination. SMF ¶ 4.

When NYU took over the practice in 2012, Plaintiff reported directly to Office Supervisor Mindy Golomb ("Golomb"), who is 71 years old. *Id.* ¶¶ 9, 65. Golomb also previously worked for Nassau Gastroenterology. *Id.* ¶ 10. Plaintiff and Golomb became close friends while working together at Nassau Gastroenterology and NYU. *Id.* ¶ 11.

In 2018, Plaintiff began reporting directly to Practice Manager Heather Dufficy ("Dufficy"). *See* Compl. ¶ 8; SMF ¶ 14. Dufficy, who was approximately 48 years old during the relevant period, was responsible for, *inter alia*, employee evaluations and employee relations issues. SMF ¶¶ 16, 62. Dufficy completed Plaintiff's 2020 performance evaluation and rated Plaintiff "Successful." SMF ¶ 17.

Dufficy states that, in 2019, she overheard Plaintiff cursing and making derogatory comments while at the front desk and within patient care areas. *See* Cabrera Decl. Ex. 4, Dufficy Dep. Tr. 33:11-24; 52:23-53:14, ECF No. 64-4. She further states that she counseled Plaintiff against using offensive language. *See* SMF ¶ 21. On August 29, 2019, Dufficy sent an email to Plaintiff stating, "[i]n follow up to yesterday's conversation, inappropriate/foul/offensive language will not be tolerated in the workplace." *See* Schneidermesser Decl. Ex. S, ECF No. 64-24.

### A. Alleged Discriminatory Treatment

Beginning in 2018, Dufficy referred to Plaintiff as "old lady" and "grandma" and told her it was time "to retire." *See* Schneidermesser Decl. ¶ 4, ECF No. 64. At some point during Plaintiff's employment, other colleagues, including Jennine Jones ("Jones") and Sandra Radovic ("Radovic") also called Plaintiff "Old Lady" and told her it was "[t]ime for hearing aids." *Id.* ¶ 19. Because she feared losing her job, Plaintiff did not report any of these comments to NYU's Human Resources ("HR"). *See id.* ¶ 5; *see* SMF ¶ 30.

### B. Complaint, Investigation, and Termination

On or around April 14 or 15, 2021, Jones, a 52-year-old African American woman, verbally told Dufficy that she was "uncomfortable working with [Plaintiff]" because of her "discriminatory comments." *See* SMF ¶ 63; Cabrera Decl. Ex. 6, Jones Decl. ¶ 11, ECF No. 61-9; Dufficy Dep. Tr. 86:5-9 (stating that Dufficy first received the verbal complaint from Jones regarding Plaintiff's inappropriate language on or about April 14, 2021.). Those comments included: telling Jones she did not "look black"; referring to Chinese people as "Chinks"; telling patients over the phone to "speak English"; and claiming that immigrants "are being thrown over the wall" and "bringing COVID into this country." *See* Jones Decl. ¶¶ 9, 12; Dufficy Dep. Tr. 87:21-88:14.

After Jones complained about Plaintiff, Dufficy contacted Nicole Lucca (Assistant Site Director) and Joe Antonik (Site Director) for guidance, and they instructed Dufficy to report Jones' complaint to HR. SMF ¶ 30. On April 15, 2021, Dufficy emailed Claudia Rose ("Rose") (HR Generalist) about Plaintiff's behavior and asked whether it was grounds for termination. *Id.* ¶ 31. Rose instructed Dufficy to investigate the complaint. *Id.* ¶ 32. Rose further instructed Dufficy to obtain a written statement from Jones regarding the complaint, and she did. *Id.* ¶¶ 33-35. In response, Jones sent Dufficy a text message on April 16, 2021, that memorialized her complaint. *Id.* ¶ 35. Jones further wrote to "express [her] interest [in] a transfer so [she] did not have to work with [Plaintiff]" anymore. *Id.* Dufficy forwarded Jones' text message to Rose, Antonik, and Lucca via email on April 16, 2023, and asked how to proceed. *Id.* ¶ 36. Rose directed Dufficy to obtain a statement from Sandra Radovic ("Radovic"), another one of Plaintiff's co-workers who is approximately 44 years old, and to "discuss the allegations with [Plaintiff]." *Id.* ¶¶ 37, 64.

Dufficy interviewed Radovic, who confirmed that she sat in close proximity to Plaintiff and substantiated Jones' testimony regarding Plaintiff's alleged derogatory statements. *Id.* ¶ 39. Radovic also reported that Plaintiff called her a "snitch," an "ass kisser," and a "bitch." *Id.* ¶ 40. Radovic submitted her concerns in writing, which Dufficy forwarded to Rose, Antonik, and Lucca on April 16, 2021. *Id.* ¶ 42.

Plaintiff's long-time co-worker, office supervisor, and friend, Golomb, also confirmed that Plaintiff would regularly use inappropriate language in the office. *Id.* ¶ 43. After NYU took over the practice, Golomb told Plaintiff to watch what she was saying in the workplace in front of people. *Id.* ¶ 44. Plaintiff responded that she could not. *See id.* ¶ 45.

On April 16, 2021, Dufficy and another member of the leadership team, Michelle Edmunds ("Edmunds") spoke to Plaintiff about the complaints, and Plaintiff denied making the

4

statements. *Id.* ¶¶ 46-47. After that meeting, Dufficy emailed Rose, Antonik, Lucca, and Irina Dolinsky ("Dolinsky") (HR staff) a summary of the meeting and asked if they needed any "additional information" for the investigation. *Id.* ¶¶ 38, 48. Rose instructed Dufficy to confirm whether "there [were] other employees who sit in the vicinity of [Plaintiff], [Jones,] and [Radovic]" who could be interviewed and instructed Dufficy to follow up with Dolinsky to "discuss next steps." *Id.* ¶ 49. Dufficy confirmed that no other employee overheard the entire incident. *Id.* ¶ 50. In response to Dufficy's findings, Dolinsky instructed Dufficy to draft a "termination notice that [Dolinsky] w[ould] present to [NYU's Employee and Labor Relations Department] for approval." *Id.* ¶ 51. Dolinsky revised the termination letter with Dufficy. *Id.* ¶ 53. Dolinsky also asked [Employee and Labor Relations Department] employee Aimee Weiner ("Weiner") for her recommendation on how to proceed. *Id.* ¶ 52.

At the conclusion of the investigation, Dolinsky and Weiner approved Dufficy's recommendation to terminate Plaintiff's employment. *Id.* ¶ 54. On April 29, 2021, NYU terminated Plaintiff's employment for violation of NYU's policies and procedures, particularly its Rules of Conduct. *Id.* ¶ 58.

## LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A material fact is one that would affect the outcome of the suit under the governing law, and a dispute about a genuine issue of material fact occurs if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing particular materials in the record.

5

*See* Fed. R. Civ. P. 56(c)(1)(A). The Court is "required to accept all sworn statements by [the non-movant] as to matters on which she was competent to testify, including what she did, what she observed, and what she was told by company managers." *Davis-Garett*, 921 F.3d at 46. And the Court must "'give credence to the evidence favoring the [non-movant] as well as that evidence supporting the [movant] that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021). Nonetheless, it is well-established that "'[t]he mere existence of a scintilla of evidence in support of the [non-movant] plaintiff's position will be insufficient' to defeat a summary judgment motion," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)), and that the non-movant must create more than "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986)). The non-movant "cannot rely on the mere allegations or denials contained in the pleadings" to save her case. *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 244 (S.D.N.Y. 2015). Likewise, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 308 (S.D.N.Y. 2000); *see also Ridinger v. Dow Jones & Co.*, 651 F.3d 309, 317 (2d Cir. 2011) (stating that to overcome a motion for summary judgment, a non-movant may not rely on "conclusory statements, conjecture, and inadmissible evidence"); *Conahan v. MedQuest Ltd.*, No. 20 Civ. 1325, 2022 WL 16748585, at *3 (S.D.N.Y. Nov. 7,

2022) (stating that "a [non-moving] plaintiff must provide more than conclusory allegations to resist a motion for summary judgment"). A non-movant's self-serving statement, without direct or circumstantial evidence to support the charge of discrimination, is also insufficient to defeat a motion for summary judgment. *See Fincher v. Depository Tr. & Clearing Corp.*, No. 06 Civ. 9959, 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008), *aff'd*, 604 F.3d 712 (2d Cir. 2010).

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir. 1994).

Courts must take an extra measure of caution in evaluating employment discrimination claims because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006). However, "'the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation.'" *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)). It is, therefore, "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson*, 239 F.3d at 466.

## DISCUSSION

### A.     Employment Discrimination

#### 1.  Legal Standards

The Second Circuit has held that ADEA workplace discrimination claims are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). To

7

succeed under this framework, a plaintiff "must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 107. Circumstances giving rise to an inference of discriminatory motive may include "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," as well as "preferential treatment given to employees outside the protected class." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). "[S]tray remarks, even if made by a decision maker, do not constitute sufficient evidence to support a case of employment discrimination [under the ADEA]." *Adams v. Equinox Holdings, Inc.*, 662 F. Supp. 3d 444, 458 (S.D.N.Y. 2023), *aff'd*, No. 23 Civ. 608, 2024 WL 1787108 (2d Cir. Apr. 25, 2024).

Once the plaintiff establishes her prima facie case, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action." *Gorzynski*, 596 F.3d at 106; *see also Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) ("[O]nce a plaintiff produces minimal evidentiary support for the claim of discriminatory motivation, the burden of production shifts to the employer to articulate a non-discriminatory reason for the adverse employment action."). "When the employer meets its burden, the plaintiff can no longer rely on the prima facie case, but must prove that the employer's proffered reason was a pretext for discrimination"—which a plaintiff can do in the ADEA context "by presenting facts which taken in [her] favor suffice to show that a triable issue exists as to whether [her] age was a 'but for' cause of [her] termination." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014); *Gorzynski*, 596 F.3d at 106 (same).

The ADEA does not authorize "a mixed-motives age discrimination claim." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009). Thus, "a plaintiff must prove that age was the

8

'but-for' cause of the employer's adverse decision," not merely that it was one of several factors contributing to the employer's decision. *See id.* at 176. While post-amendment NYSHRL employment discrimination claims are interpreted more liberally than federal ones,[2] *see Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 578 (S.D.N.Y. 2023), such claims are still analyzed under the familiar *McDonnell-Douglas* framework, and thus also require a showing of but-for causation. *See Ferrando-Dehtiar v. Anesthesia Grp. of Albany, P.C.*, No. 120 Civ. 1373, 2024 WL 1345345, at *6 (N.D.N.Y. Mar. 29, 2024); *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020).[3]

---

[2] In 2019, the New York State Legislature amended the NYSHRL to direct courts to construe it, like the New York City Human Rights Law ("NYCHRL"), "liberally for the accomplishment of the remedial purposes thereof," bringing it closer to the city than to federal standards. *See* N.Y. Exec. L. § 300. "[W]hile courts agree that the amendments do not apply retroactively, courts have arrived at different conclusions with respect to the amendments' effective dates." *Eur. v. Equinox Holdings, Inc.*, No. 20 Civ. 7787, 2022 WL 4124763, at *7 n.10 (S.D.N.Y. Sept. 9, 2022) (collecting cases), *appeal withdrawn*, No. 23 Civ. 907, 2023 WL 9021623 (2d Cir. Aug. 28, 2023); *compare Del Villar v. Hyatt Hotel Corp.*, No. 19 Civ. 10891, 2022 WL 2316205, at *4 n.3 (S.D.N.Y. June 28, 2022) (stating that the amendments to the NYSHRL apply "only to conduct that took place after its effective date, August 12, 2019"), *with Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021) (stating that the amendments to the NYSHRL "only apply to claims that accrue on or after the effective date of October 11, 2019"). However, because the Court assumes *arguendo* that Plaintiff may establish her prima facie case, the effective date of the Court's more liberal construction has no bearing on the Court's analysis.

[3] The Second Circuit has assumed, without deciding, that the NYSHRL requires a showing of but-for causation. *See, e.g.*, *Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 7 (2d Cir. 2017) (finding that "the record lack[ed] sufficient support for [plaintiff's] argument under the but-for causation standard of . . . NYSHRL"); *Barone v. S & N Auerbach Mgmt., Inc.*, 645 F. App'x 13, 14 (2d Cir. 2016) ("We have assumed without deciding that 'but for' causation is also required under the NYSHRL."). "The New York Court of Appeals has not yet resolved this issue of New York law." *Farmer*, 473 F. Supp. 3d at 333 n.7 (S.D.N.Y. 2020). Absent clearer guidance, the Court joins other district courts in this Circuit that have applied the but-for standard to NYSHRL claims, even after the 2019 amendments to the NYSHRL. *See, e.g.*, *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 340 n.22 (S.D.N.Y. 2020) (collecting cases).

## 2. Application

Assuming *arguendo* that Plaintiff may establish a prima facie case of discrimination under the ADEA and NYSHRL, her claim nonetheless fails because Defendant has met its burden of establishing a legitimate, non-discriminatory reason for Plaintiff's termination, while Plaintiff has failed to meet her burden of establishing that Defendant's reasons were pretextual.

The undisputed record reflects that when Jones complained to Dufficy about Plaintiff's comments, Dufficy contacted HR.  *See* SMF ¶¶ 30-33.  Following HR's guidance, Dufficy interviewed two individuals—including a long-time friend of Plaintiff's—who corroborated Jones' complaint.  *Id*. ¶¶ 39-45.  Dolinsky and Weiner subsequently approved Dufficy's termination recommendation.  *Id.* ¶ 54.  Only then was Plaintiff's employment terminated.  Though she denies engaging in misconduct, Plaintiff does not deny that there was an investigation into the complaint lodged against her.  *See id.* ¶ 57 (acknowledging that Dufficy spoke to witnesses about the complaint); Schneidermesser Dep. Tr. 85:19-86:4, ECF. 61-1 (stating that Plaintiff denied making discriminatory comments when confronted by Dufficy and Edmunds).

"In a discrimination case," courts "are decidedly not interested in the truth of the allegations against [the] plaintiff," as "the factual validity of the underlying imputation against the employee is not at issue."  *McPherson v. N.Y.C. Dep't. of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006).  Instead, courts assess "what *motivated* the employer."  *Id.*  Here, the undisputed record reflects that Defendant investigated a complaint made against Plaintiff, then terminated Plaintiff after determining that she had violated NYU's policies, namely its Rules of Conduct.  "Where a plaintiff has been terminated for misconduct, the question is not whether the employer reached a correct conclusion in attributing fault [to the plaintiff] . . . , but whether the employer made a good-faith business determination."  *Kolesnikow v. Hudson Valley Hosp. Ctr*., 622 F. Supp. 2d

10

98, 111 (S.D.N.Y. 2009). Plaintiff has not established that Defendant's ultimate decision to terminate her employment was not made in good faith. "Even assuming defendant[] w[as] wrong in [its] belief that plaintiff had engaged in [] misconduct, what is significant is that [it] based [its] decision to dismiss plaintiff on that belief, and not on [Plaintiff's age]." *See id*. Thus, "[a]t their heart, Plaintiff['s] claims reflect [her] disagreement with the Defendant['s] business judgments," or "reflect the Plaintiff['s] subjective feelings and perceptions that [she was] being discriminated against," neither of which "support[s] [her] claim of discrimination." *Newsome v. IDB Cap. Corp.*, No. 13 Civ. 6576, 2016 WL 1254393, at *16, *22 (S.D.N.Y. Mar. 28, 2016).

Plaintiff has failed to establish a genuine dispute of fact as to whether Defendant's stated reason for her termination was pretextual. "Under certain circumstances, a plaintiff may defeat a summary judgment motion by offering evidence from which a jury could find that the employer trumped up false charges as a pretext for firing her." *Kolesnikow*, 622 F. Supp. 2d at 108 (citing *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 96 (2d Cir. 1994)). Here, Plaintiff attempts to demonstrate pretext by claiming that Dufficy, aided by Jones and Radovic, conspired to terminate Plaintiff's employment out of discriminatory animus against her based on her age. *See generally* Pl.'s Mem. of L. in Opp'n to Def.'s Mot. for Summary J'ment ("Pl.'s Opp'n"), ECF No. 62. But Plaintiff did not depose either Jones or Radovic. And her assertion that Dufficy orchestrated her termination, *see id*. at 11-12, is unsupported by the undisputed facts, which reflect that under the guidance of HR, Dufficy followed a multi-step process that included multiple employees and ultimately led to NYU's decision to terminate Plaintiff's employment for her alleged misconduct. *See* SMF ¶¶ 57-58. In support of her theory that Dufficy conspired against her, Plaintiff cites only her own conclusory, self-serving testimony. *See, e.g.*, Schneidermesser Decl. ¶ 39 ("Nothing [Jones and Radovic] say about me can be trusted because they, along with Dufficy, were looking for an excuse to get me out of the workplace because of

11

my age"); *id*. ¶ 41 ("In her text, Jones makes wildly false accusations that I said awful things to her and to patients . . ."); *id*. ¶ 56 (". . . Weiner's decision to accept Dufficy's word at face value violated NYU's written policy providing for a 'fair, impartial' investigation."). Such conclusory testimony does not create a genuine dispute of fact sufficient to resist summary judgment. *See Hale v. Vidal*, No. 22 Civ. 2973, 2023 WL 7211909, at *1 (2d Cir. Nov. 2, 2023) (concluding that where the plaintiff "relie[d] almost entirely on his own affidavit to establish the [employer's] motive in taking any action against him, but [where] that affidavit [was] too conclusory to create a genuine issue of material fact," the district court "correctly granted summary judgment" for the defendant); *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 29 (E.D.N.Y. 2015) ("A plaintiff cannot merely rationalize, explain, or disagree with an employer's proffered non-discriminatory reasons to survive summary judgment.").

Again, the undisputed record reflects that after Plaintiff's co-worker lodged a complaint against her for allegedly making offensive and discriminatory remarks, several members of NYU's management team—including members of NYU's HR and Employee and Labor Relations staff—investigated the complaint and terminated Plaintiff based on their determination that she had violated NYU's Rules of Conduct. *See* SMF ¶¶ 57-58. Presented with these facts, a reasonable jury could not conclude that Defendant's decision to terminate Plaintiff for violating its Rules of Conduct was not made in good faith. Thus, Plaintiff has not established that "but for [her] age, Defendant[] would not have terminated her." *Ehrbar*, 131 F. Supp. 3d at 32. Accordingly, Plaintiff's ADEA and NYSHRL employment discrimination claims are dismissed. *See Adams*, 662 F. Supp. 3d at 457 (dismissing ADEA claim where the plaintiff "was fired because she violated Equinox policy"); *Williams v. Allied Barton Sec. Servs.*, No. 16 Civ. 8047, 2018 WL 4761577, at *5 (S.D.N.Y. Sept. 28, 2018) (dismissing ADEA claim on summary judgment where "the undisputed evidence reveals that Plaintiff violated company policy"); *see*

*Godineaux v. LaGuardia Airport Marriott Hotel*, 460 F. Supp. 2d 413, 424, 424 n.11 (E.D.N.Y. 2006) (dismissing NYSHRL claim on summary judgment where the plaintiff, *inter alia*, "violat[ed] company policy").

### B.      Hostile Work Environment

#### 1. Legal Standards

To establish a hostile work environment under the ADEA, a "plaintiff must show that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003).[4]  This requires the plaintiff to show that the alleged misconduct was "severe or pervasive enough to create an objectively hostile or abusive work environment," and that she "also subjectively perceive[d] that environment to be abusive." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 79 (2d Cir. 2010).  "To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).  "In short, a plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Id.*  "But isolated incidents or episodic stray remarks are not sufficiently continuous and concerted in order to be deemed pervasive." *Adams*, 662 F. Supp. 3d at 459.

---

[4] *Terry* further holds that "[t]he same standards apply to hostile work environment claims brought under the ADEA [as under Title VII]."  336 F.3d at 148.  Likewise, "[h]ostile work environment claims under the ADEA . . . and [Section] 1983 are assessed under the same standards." *Nnebe v. City of New York*, No. 22 Civ. 3860, 2023 WL 2393920, at *17 (S.D.N.Y. Jan. 30, 2023), *report and recommendation adopted*, No. 22 Civ. 3860, 2023 WL 2088526 (S.D.N.Y. Dec. 14, 2023).  Accordingly, throughout this section, the Court cites ADEA, Title VII, and Section 1983 caselaw.

13

To allege a hostile work environment claim under the post-amendment NYSHRL, a plaintiff must allege "unequal treatment based on membership in a protected class." *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016); *see also Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015). The "more lenient" amended standard "brings state law closer to the standard to establish a hostile work environment claim under the New York City Human Rights Law," "under which a plaintiff need only show that [s]he was treated less well than other employees because of [her] protected class." *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023).

### 2. Application

As a threshold matter, Plaintiff does not expressly state a hostile work environment claim in her pleadings. *See generally* Compl. However, "[w]hile [the Court] acknowledge[s] that [Plaintiff] might have stated her claim of hostile work environment harassment more artfully, the essential elements of the charge do appear in the complaint." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000) (Sotomayor, J.). Defendant does not argue that it would suffer prejudice by the Court's consideration of this claim, *see generally* Def.'s Reply, ECF No. 68 (arguing only that the Court "is permitted to disregard" the claim), and the Court does not find any. "In these circumstances, [Plaintiff's] failure explicitly to plead a hostile work environment claim" does not preclude the Court from considering that issue on summary judgment. *Cruz*, 202 F.3d at 569-70.

It is undisputed that at least some of Plaintiff's co-workers called Plaintiff "Old Lady," and "Grandma." *See* Golomb Dep. Tr. 97:2-101:16, ECF No. 64-3; Dufficy Dep. Tr. 184:16-184:25. Plaintiff additionally testified that when she used the bathroom, a co-worker would "tell[] [her] to hurry up out, old lady, why are you in there so long." Schneidermesser Dep. Tr. 35:14-19. Plaintiff testified that, as a result, she "[c]ouldn't even go to the bathroom." *Id.* at

14

62:10-11.  Additionally, Plaintiff testified that Dufficy and at least one other co-worker left Post-it notes on Plaintiff's computer keyboard that said, "Time to retire, Old Lady," "Hurry up and retire already, Grandma," and "Hearing Aid????"  *Id.* at 62:16-63:6; Compl. ¶ 9.  Plaintiff stated that this was "so overwhelming to [her]" that she "didn't even want to come into work."  Schneidermesser Dep. Tr. 63:15-16.  Dufficy and other co-workers made these remarks "[o]n a regular basis."  *Id.* at 32:10.  The record reflects factual disputes over whether Plaintiff also referred to herself by these terms, the frequency with which such comments were made and by whom, and whether the remarks were intended as terms of endearment rather than as expressions of hostility.

"Resolving all ambiguities and drawing all inferences in [Plaintiff's] favor, [the Court] cannot say as a matter of law that these incidents could not amount to a claim of a hostile work environment."  *Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 76 (2d Cir. 2023).  For example, a reasonable jury could find that Plaintiff's fear of being subjected to discriminatory treatment while, e.g., using her keyboard or going to the restroom, made it more challenging for her to carry out her job.  "Regardless, these are determinations for the jury, not the judge, to make."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [the judge] is ruling on a motion for summary judgment or for a directed verdict.").  Because Plaintiff has raised triable issues of material fact regarding her hostile work environment claim, her claim survives under the ADEA and NYSHRL.  Accordingly, Plaintiff's hostile work environment claims withstand Defendant's motion for summary judgment.

## CONCLUSION

For the reasons discussed herein, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment. Specifically, Plaintiff's employment discrimination claims are dismissed. However, Plaintiff's hostile work environment claims survive. The parties shall file a joint status letter within **two weeks** of publication of this Opinion & Order. Such letter shall state whether the parties request a referral for mediation through the District's Mediation Program or before the assigned Magistrate Judge. Alternatively, if the parties do not believe settlement discussions would be productive, the letter shall state the parties' availability for trial in November 2024 through February 2025.

The Clerk of Court is respectfully requested to terminate ECF No. 61.

SO ORDERED.

Dated: September 10, 2024
New York, New York

_____
DALE E. HO
United States District Judge
